Case number 23-5254, Twin Metals Minnesota LLC and Franconia Minerals U.S. LLC appellants versus United States of America et al. Ms. Blatt for the appellants, Ms. Jaffe for the appellees, Ms. McGrath for the intervenor appellees. Morning Ms. Blatt. Good morning and thank you and may it please the court, Lisa Blatt for the appellants. With the court's permission, I would like to address two post-briefing developments that we think suggest that the court should hold the appeal in abeyance just based on judicial economy. First, we're obviously on the eve of a new administration that has publicly, enthusiastically expressed support for this project and we think that that government could immediately take new action that would moot the issues on appeal. And second, there's the flurry of 28 J letters that have been filed in the last, I think, 10 days or so. So, on December 19th, the Forest Service, or sorry, the Interior Department, the government informed this court and us for the first time that Interior sought the Forest Service's view on Twin Metals' preference rights, lease applications, and Forest Service then responded expressing their opposition to the project. On Friday, we filed our own 28 J letter that informed the court that we have since administratively appealed that Forest Service action. And although this court, we think, could decide all the issues on appeal today or now and without regard to the Forest Service's view, at least the preference rights lease applications involve complicated questions, certainly a first impression that the court may want to wish and wait if it administrative appeal that you recently filed moot this case. Well, I don't think it would moot it, but it certainly could affect it because the government is relying on the Forest Service lack of consent and obviously if that's appealed. But I think more importantly, and this dovetails with both the timing of the letter that it was three years after the Interior Department declined and declined the applications three years ago. This was not the basis and it came on the eve of oral argument, strikes to us as not only grotesquely post hoc, but even smacks of possible political issues. And Monday, a new administration comes in. And so I think it just dovetails with that. To be sure, you can decide the question simply on Chenery and Calcutt grounds because the Interior Department doesn't even cite the Forest Service letter. So you can just ignore the Forest Service views. It doesn't prohibit you from deciding it. It's just a question of judicial efficiency. So it's totally obviously within your discretion. And I'm going to start with the jurisdictional issue, but when we get into the preference right lease applications, we can walk through it and you'll see you don't have to even look at what the Forest Service did. Administrative appeal goes only to the PLRA applications, right? That's correct. That's correct. Not the lease renewal. So I'll start with the jurisdictional issue. This is involving the APA challenge to the 2022 interior cancellation of a 2019 lease renewal. And the court below held that it lacked jurisdiction because it construed the as being the source of the right being the 1966 lease, and it said the complaint was challenging the government's interpretation of that lease. That obviously is manifestly wrong because the government's cancellation was not based on the lease, much less any interpretation. The government's cancellation was based exclusively on statutory and regulatory grounds. The complaint challenges those grounds and judicial review of statutory and regulatory views obviously falls within the heartland of APA jurisdiction. What's the source of, on your view, what's the source of the alleged right to renew the leases? So the APA. It's the APA. Remember, if the cancellation said the government cancels a lease and said we cancel this lease because we think it violated NEPA, you'd have a classic review of the government's view under NEPA. Well, guess what? That was one of the reasons the government canceled this lease. I mean, that's a very odd view that review would be separated. If you're claiming under the leases, you go to the court of federal claims. But if you're saying that the explanation for construing the leases was not adequately articulated and therefore arbitrary and capricious, sounds like APA. So you come here. No. And that's an odd. Well, that may be, but that's not this case. No one is saying that they arbitrarily construed the lease. They arbitrarily and unlawfully construed a statute and a regulation. The cancellation is based, recall, on the Downs opinion. And the Downs opinion cites regulation 3514 and advises BLM that they are authorized to cancel a release. Remember, there's already a release here. And the Downs opinion says there are three regulatory and statutory reasons you are authorized to cancel the release. And the cancellation relies on that. The first is it construed, i.e., the agency construed section 508, a statute to require for service consent. Second, the Downs opinion says there's a series of four regulations that require the government to use the standardized renewal forms that only give you a preferential right of review. And third, the Downs memo says the renewal violated NEPA because you did not consider a no-action alternative. Now, it also retracts the Giorgiani opinion, which comes from the Trump administration. And the Giorgiani opinion gives you competing views of the statute and regulation. So who is right between Giorgiani and Downs is a classic APA. The government doesn't dispute if the Downs opinion is wrong based on statute and regulation. There's an adequate release that—I'm sorry, adequate renewal, a lease that is in existence. So it's not like we said and brought a complaint saying, Interior, you must renew a lease. It's already been renewed. What we have is a cancellation. And I think the example we give in our brief, if an agency says, we're going to cancel a lease because you have a left arm or because you're left-handed or because it's a Tuesday or because we construe a statute that says the lease was unlawfully renewed, that is a paradigmatic, classic APA challenge. This court—and we cite the megapulse, which is cited then on Crowley—that even if the court below, the district court has to construe the lease, this court said pretty plucidly that that does not transform what is otherwise within the jurisdiction of the court into an action on the contract. What matters is the source. So if the government had said, we construe this lease, you violated it, then that's a disguised breach of contract claim. But that's just not this complaint. The complaint is—and I think it's in paragraph 113—seeks classic APA remedies. It seeks vacature of the Downs opinion, vacature of the and the district court on remand has to sort through the regulations and the statute, and the government doesn't dispute that if once those are vacated, the lease already got renewed in 2019. It's only three years later when the government canceled. They're only impermissible if a court would agree that the interpretation was inconsistent with the leases. The rights here clearly emanate from the leases. You don't have the leases, there's no discussion. That's the fight is all about. So there's no discussion. I mean, there's no dispute that Article 3 standing and this case wouldn't be here but for a contract. But every single decision of your court and Megapulse is saying the fact that there's a but-for relationship between the cause of action and the fact that you're in existence does not deprive the court of jurisdiction. This court could never review arbitrary and capricious deprivations of contractual rights based on statutes, regulations. I mean, this is a classic APA case. We cite the Texas oil case where the court said we unwind on lawful agency action and that meant the underlying contract was valid. So I just think that the but-for was a bridge you crossed in Megapulse. If you remember in that case, it was a government contract and the issue in Megapulse was the government was to release trade secrets and the plaintiff there said you can't take our trade secret information and the government said no, no, we think we're entitled to do that under the contract. That case turned on a contractual interpretation of the contract vis-a-vis the Trade Secret Act. So it cannot be the fact that we're here because we have a renewed lease. The government canceled it not even citing any interpretation, not citing the lease at all. It said you violated our statutes and regulations. If we agree with you that would require us to send back counts one and four. Correct. Wouldn't affect counts two and three. That's correct. Absolutely correct. That's why, you know, the jurisdictional issue I think is quite straightforward because you can't change the fact that the only basis for the cancellation did not cite the lease, did not construe the lease, did not interpret the lease, and we're not challenging any governmental interpretation of a contract. Plain and simple. The preference right lead application is a much more, I can turn to it, but it is a much more complicated, you know, regulatory analysis. Before I turn to the preference right leads applications, the one thing I will say because the other thing the judge, the court below relied on was specific performance and specific performance we think would have to where we're asking a court to order the government to take specific action on a contractual provision. Of course we're not doing this here. We're just asking to unwind unlawful agency action, return to the status quo ante, which is an existing lease renewal that, you know, the Trump administration entered into back in 2019. I don't understand what you think, what regulation you think they violated or what statute. So we don't think that. What I'm trying to say, I don't think the way you're looking at it rings true as I read the record. They were acting within the authority that they are given based on their view of the contract. It's a paradigmatic example of a contractual dispute. There's no rights here save for the contract. There's nothing in the regulations that answer the questions that are at issue Yes. With all due respect, 3514 is a regulation. The interior cancellation, which is that, which is in the joint appendix, cites, says we're relying on the Downs opinion and I'll just go through it. Downs said that you have to have forced consent. Georgiani says I read the statute not to require forced service consent and the Forest Service had no authority to veto this. The second point is Downs says Georgiani relied on a regulation, 3221.4f. You may disagree with Georgiani's review of the regulation, but he construed that regulation to give twin metals a right to automatic renewal. Georgiani and also, we also relied on the contract. Downs in turn says I've got four regulations that we think don't stand for that proposition, that when read in combination with 3221.4 don't give twin metals an automatic right. So you may be right. We think you will be wrong, but it'll be on appeal. But the district court has to actually going to have to look at these regulations and decide between Georgiani and Downs who is correct. And then the third provision has nothing to do with the lease at all. The entire authority for saying you can terminate or cancel the lease is because the Department of Interior did not conduct the right NEPA analysis. So again, I started out by saying if we had a lease, Interior says you got to cancel it because you violated NEPA. I don't see how the government could say with a straight face that that's not within an APA jurisdictional count. I mean, and that's one of the basis for it. Now, it's true that there is a dispute about the interpretation of the lease, but the government did not rely on anything to do with the lease to do it. So the exclusive basis is all statutory and regulatory use. I suspect they'll say that they surely did rely on the lease in the sense that what they were saying was we have the authority. There is nothing in the lease that prohibits us acting one way or the other. You have lease rights. You're claiming your lease rights have been violated. I mean, that just bleeps out. It's so clear. We don't have a lease. We had a lease. So there's no question it was a contract. Under the lease, the government could not take these actions under the lease. But that's not the complaint. The complaint says under the authority that they cited under the regulation and statute, they had, they incorrectly. I think the government, I'll let them speak for themselves. The way I construed it was that the government is essentially saying we have the authority under law to be able to approve or not approve here in a situation where there's a lease, especially when there's nothing in the lease that gives you the rights that you're claiming. Assume you're right. Then your view is the Trump administration erroneously gave us a contract. They gave us a lease. You may be right that the Trump administration was out to lunch, but they issued a lease. The Biden administration came in and said, we can only get out of our contractual relationship if we have the regulatory authority to do it under 3514. And we're going to cite a bunch of statutes and regs that do that. You cannot read the Downs opinion is 10 pages of statutory and regulatory analysis that doesn't analyze the lease. It doesn't say you didn't have a right under the lease. It doesn't say you didn't have a right to renewal. It literally says when the Trump administration signed that lease, it violated our regulations and our statute. The government can see. I don't think they would dispute if Ms. Downs is incorrect, the cancellation is invalid and we have a lease. That's an APA claim. Now, again, we could have brought a you breached the lease argument in the court of federal claims, but we didn't bring that claim. That claim, to be sure, belongs in the court of federal claims. And we think we do have a contractual claim because, you know, they breached the lease. But we have also an APA claim that the regulatory and statutory analysis and their justification. Again, if the Downs opinion says you should cancel this lease because we don't like the way twin metals, we don't like the foreign country they're from, that doesn't belong in the court of federal claims. It may be a breach of contract, but you can still challenge it in district court. I guess another way of putting it is that court of federal claims doesn't adjudicate whether the administration or any administration properly construed a statute of regulation. Yeah, they would. Yeah. In a breach of contract, I probably think they would have jurisdiction to view a government's defense under a statute. But you can't we could not bring this. We could not bring this claim in the court of federal claims. They simply would have no jurisdiction. Regulation. One of the regulations you're relying on says that the terms of the lease renewal governed by the terms of the lease. Yes, I know. And that's when that's when the Downs opinion says I've got four other regulations to give light to that. And we disagree. All we're saying is that that court has jurisdiction to the regulations. What you're exactly saying is something that the district court is free to say and we're free to appeal. But that's right. That's reading regulation. And the fact, again, that the court in Megapulse and in Crowley said, you know, we if the fact that the contract has to be construed in the course of this, that doesn't deprive the court of jurisdiction. It doesn't even affect the NEPA analysis and the for service consent. You can look at the you can burn the and you still have to resolve the for service consent issue and the NEPA claim. The lease is just there's there's no construction of the lease. There's no citation to the lease. The lease is irrelevant. We're literally talking about a NEPA. Did you have to go look at a no action alternative? That's a pure question of law has zero to do with the lease. And as the for service has to consent. I don't the court can't the court can say nothing about the lease in response to those claims. Government contract law is very complicated. I mean, there's a federal acquisition regulation that reads like an encyclopedia. And it's just not right to say that the CFC deciding a contract claim won't routinely have to construe all of positive law reflected in that regulation. I agree and reflected in the statutes that give the government authority to contract in the first place. Totally agree with this kind of, you know, separate the attempt to separate the terms of the lease from the terms of the statutes and regs that sort of define the government's contracting authority here. Just seems seems like that's a hard thing to untangle. Well, two responses. First, you can always bring a case in this court that also where the CFC has concurrent jurisdiction. It's just depending on the nature of the right sought the nature of the relief. But second, and more importantly, yes, but your but your theory is that we have to sort of cleave the statutory and regulatory questions from the contract questions. No, the theory is where the source of our right is exclusively on the APA because we are challenging the government's exclusive statutory and regulatory rights. If you just again, looking at the NEPA and the Forest Service consent issue, that we couldn't bring that case in the Court of Federal Claims has nothing to do with the fart has nothing to do with the lease. We have a lease that the Trump administration renewed in 2019. And when the Biden administration said, interior, you can cancel this because it violated NEPA. You don't look at the lease to resolve that. Doesn't matter what the lease says. It matters what NEPA says. When it says you should have gotten Forest Service consent. There's nothing in the lease that speaks to this. You couldn't bring that case. The only issue where as an incidental matter, the lease will get construed as this battle between your Johnny and downs about what kind of standardized form has to be used and what that means. We think we independently have an argument that the lease controls the regulation. But that is jurisdictionally irrelevant that the this that the district court or even this court would have to construe a contract in an APA claim. Otherwise, you're depriving this court of jurisdiction to review any any unlawful agency action that relates to a contract. Suppose there were no cancellation. You say you think the lease was validly renewed. The government thinks it wasn't validly renewed. So they refused to perform. You bring the breach of contract claim and then you litigate. Well, that's that would be a breach of contract claim if there was no cancellation. Right. I think turning on the statutes and regs that. Well, I don't I mean, I guess if they said we're breaching. We're breaching the contract. I don't know. I mean, I've never seen that. Validly renewed because the Forest Service didn't consent or whatever. The the reason why I'm struggling with the question is the force that's already interior has this regulation that tells you when you can cancel a release and you can't sorry, cancel a renewal and you can't cancel renewal because you think there was nonperformance. You can only cancel it because well, you can. But they said you also can cancel it if it violated the statute and regulations when you entered into it. And that's what makes this the classic APA challenge. If there was no thirty five fourteen and there was no downs opinion, then it's going to turn on what the complaint looks like. But if it's a disguised contract claim, I think under the two cases, the government sites where it's just the government breaches the contract. But this is not a breach of the renewal. I mean, well, it is a violation of thirty five fourteen. It's not in your opening brief and reply. If you argued something for the first time in reply, we didn't we're not arguing thirty five fourteen. That's the sole basis of the cancellation. So the government then what's the violation of a regulation since you don't want to focus on the lease? So it downs because down says, say, look to the lease. You're arguing the reason we have a claim that's viable is because they allegedly violated a regulation. Suppose we go to the merits of that. What did they violate? What did the Trump administration, the Biden administration claim you're bringing? Where was the violation of a statutory provision or regulation? Facially, we're not saying if I could just be clear on this, we're not saying the Biden administration violated a statute on this claim. We're saying the Biden administration erroneously accused and found that the Trump administration violated the statute. That's the Dow's opinion. You're saying you're bringing a claim to the court and saying we were acted against and and our rights were violated. And so, of course, as a judge, I'm saying based on what? Now, your whole argument today is nothing to do with the lease. It has to do with the regulations they were relying on. So now I'm curious to know what regulation did they violate. So you can't then say, well, Trump did this and Biden did that. You have to now answer the court and say, what specifically was the statute because your brief is not clear on this. Well, I'm looking at it again. It is not. I think our brief does say under the APA, you're allowed to bring judicial review of an agency's construction of a statute. The all I want to know is just so I can think about this carefully beyond what I've already done, what regulation or statutory provision do you think the government actors violated in acting against your client? Only one. As part of our attack on the down statutory and regulatory analysis, we say that downs relied on four regulations that we think are inconsistent with the thirty to twenty one point four F, which you just read earlier, you know, that you have this right to renewal consistent with the terms of the lease. So we think in terms of that battle of the regulations, we think the downs opinion incorrectly reads the regulations in violation of another regulation. That's a pure APA challenge. Right. Your clients had that was abrogated as what? A regulatory, a regulatory right to automatic renewal of the lease. Automatic renewal. You're saying the radio. I want to make sure I have this clear. Your argument to this court, because this for me, given where you are, is the heart of it. There was a regulatory provision that gave us a right of automatic renewal. I want to say I sure didn't come away from your brief understanding where that was coming from. I'll look again, but I want to make sure I understand what that's your argument. Yeah, but with all due respect, with all due respect, that is what Georgiani, the Trump administration interior secretary said. No, no, no, no. And downs rescinds it. No, you're at a different stage now. I agree. OK, I know you. I certainly know, you know. But the point is, I don't know what it is you're arguing on because I don't see the regulation that gives the right that you're asserting. So if the government said just you interior, we want you to cancel this lease because of NEPA, we're not going to come into court and say we have a right under NEPA to the release. I can't say that. What I would say is we already have a renewal. The government is erroneously lying, erroring on NEPA. Their construction of NEPA is unlawful. Once you give us give us a site and some text statute, don't say APA, but a statute or a reg that gives you this right where to give me the site and the text. It's the APA. It's the arbitrary and unlawful. No, no, I assume I don't. But our cause of action is under the APA. But the source of the substantive right to renewal. There's a contractual law. So it's a I mean, I guess a contract is positive law. The stat, the actual underlying right is under the contract. Okay. It's a it's a renewal. It's a contract. And the cancellation we did. Yeah, well, then right back to the same place. Well, then any time you have an unlawful agency construction of a statute, that's the basis for action taken on a contract, you would be depriving the court of jurisdiction before you move on. Just one question about the remedy. It's not quite specific performance, but it's not too far off. It's setting aside an action, the effect of which is to reinstate the contract. You've also asked for a declaratory judgment. I mean, suppose you and I have a contract and I say it's been repudiated and I'm not going to perform. You go to district court for a declaration that the contract is still in effect. Classic contract remedy. And it seems a lot like what you're doing here. The difference is that if forget the repudiation, you have the unlawful agency action of a separate final agency action, the interior cancellation, the Downs opinion. If you set those aside, just the status quo ante, the APH, just like the Texas oil case, the renewal is just there. The court doesn't have to do anything. If the court just sets aside the unlawful agency action, no other relief needs to be done. It's just the release is by force of law. It's in existence. So the court doesn't have to order interior to do anything. It doesn't even have to declare the lease valid. If you set aside the cancellation, the release is there. So you could have a complaint that just says, please set aside the Downs opinion. Please set aside the statutory analysis in it. And we win. We go home. We're happy. And that's an APA. That's not specific performance. That's just set aside unlawful agency action. So if I can turn, I guess, to the next issue, and that is the preference-raised lease application. So another regulation here, I mean, the two are somewhat parallel in that the cancellation is based on one regulation, denial of the preference-raised lease applications is on another regulation. And we think those are parallel subject to APA challenges. One is a cancellation, and here is a declination of an application. So the government relies on 23102, and that says that it's mandatory that you deny any application if the land is subject to a withdrawal or service withdrawal request, and the consideration of that application is discretionary. And so what the BLM decision says is the decision here was discretionary. Therefore, it's denied. And there was no other analysis. And we think that that just is completely contrary to the regulations, that BLM did not have the discretion to deny the preference-raised lease application. I can walk you through that, but we rely first on the 350110, which says preference-raised leases are issued to holders of prospecting permits that discover a valuable mineral deposit. And then, importantly, 350711 and 350719 then carefully delineate exactly when BLM will grant one of these applications, and then it says, and here's where we're going to deny it. And then, most importantly, they expressly point out to the holders of these prospecting permits when they have complete discretion. So in 350711D, the BLM informs the public that if you're a prospecting permit and you have land that relates to the reorganization plan number three lands, which are acquired lands, you just are not entitled to a preference-raised lease. And then the regulation 350550, BLM says our decision to grant or deny this application is within our complete discretion. We also think that the regulatory history, sorry. Sorry, I don't have all the numbers in front of me, but suppose I thought that BLM's discretion is circumscribed, but the Forest Service has discretion to refuse consent, which then compels denial. What result then? Right. And so the government says exactly what you said, forget even our discretion, the fact that the Forest Service discretion would trigger the 25, the mandatory denial under 2310. And we have several responses. The first most obviously is the Calcutt-Chenery response, was that was not the decision on which the agency relied? So you would have to remand it? No, but if what I said, if what my question suggests is right, then it's not, it's just illegal. You just lose on legal grounds. There's nothing to remand. The decision, um, when I get the allowance of which is, is discretionary and then end of case. Yeah, but that's not what the agency said. That's what they now want to say in their brief. It's a new argument. It's just under Chenery. They would have to say, they said it's not within BLM's discretion. The government in their brief says. No, I get that. I get that, but we don't do Chenery remands when a claim is just legally invalid. Well, regardless, I mean, maybe we do it for exercises of discretion. Maybe yes, maybe, maybe no. I'm not so sure about that. But even if you're correct on that, we think it is a very litigable issue and we would litigate it that the Forest Service doesn't have that kind of discretion, that absolute discretion. And we've got several arguments. First is just the statute. We would argue under the statute that the Forest Service is circumscribed by, it has to be limited to development and utilization. More importantly, we think that, remember in 2016, the Forest Service attempted to deny consent and they issued, I think it was a 20-page document purporting to have reasoned analysis. And that would be just subject to an APA challenge. Finally, we would argue that, and we think there's a good argument, that the Forest Service already consented here. And that would happen at the prospecting permit stage. And we get into a fight, there would be a lot of litigation over this, but the actual Forest Service consent to the prospecting permit says, this is not, we're not consenting to your preference right lease applications under reorganization plan number three lands. And the manual distinguishes between those reorganization plan number three lands and the 508 lands. And so when it says the consent is provided at the prospecting stage. So we would be arguing like all of this stuff that hasn't been briefed, which is why I said this is a very complicated issue. But all we had below was the agency saying that the Bureau of Land Management didn't consent. Now they come back and say, well, the Forest Service had discretion, but we would say, what are you talking about? We have a lot of arguments under the Forest Service, the Forest Service's ability or lack of ability, but you know, a lot. Yeah. So, so what I hear you saying is even spotting me, no Chenery. Oh, we have lots of arguments. Remand for those legal questions. Yeah. And I, my guess is that the district court wouldn't even sort that out. We would go back first to the Forest Service. And remember we had, if you look at what, again, this is what the Trump administration was doing. The Trump administration was saying Forest Service didn't have a right to the lease renewals. So we're not sure what the government thinks of our, the new government will think of our Forest Service arguments, but we have a series of arguments that we would make that the Forest Service just can't say we're not in the mood. We think the Forest Service can impose reasonable conditions. We think there has to be a NEPA analysis. We think there has to be gazillion permits we'd have to get before we mine. But this is just a preference right lease application, which just means we have a right to get in there as opposed to anyone else. It's not a right to mine. Of course, we have a long, long way to go, but I just don't think the government can say, and I think this is, again, another regulatory issue. I think the government is saying under 2310, the thing that triggers the mandatory denial, that that's something that has to be within the agency's complete discretion. And the fact that the regulations so clearly demarcate between when the agency has discretion and just these other ones, and this is what I was going to get into about the regulatory history, although I know you kind of were getting into the Forest Service, but this is why, again, telling you you're better off waiting, but it's a very complicated history where, and it's in the 1999 preamble to the regulations, the government talks about there's been a history of saying you're entitled to these preference right lease applications, but as a historical matter, we've always treated reorganization plan three very differently, and we now want to make our regulations clear that you're not entitled to it, and then the rest of it, we're just converting into plain English. And so the previous one said you are entitled to these preference right lease applications. But I will spot you. This is, you know, you want to wade into this. It's a lot. And Monday, Monday, we have a new administration. The president has. All right, we have you. Thank you. Ms. Jaffe. May it please the court, Rebecca Jaffe appearing on behalf of the United States. I'm going to jump right into the contract claim. The source of plaintiff's asserted rights is the lease contracts, not any laws. In making this determination, the court looks at the substance of the claim, not any artful characterizations. Interior canceled the leases because in Interior's view, renewal was discretionary. That's at JA 251. And Interior said, when we renewed the leases in 2019, we did not obtain the Forest Service's consent to renewal, and we did not consider a no renewal alternative under the National Environmental Policy Act. Interior said that was wrong because renewal was discretionary, and therefore we had to consider not renewing and had to obtain Forest Service consent. Twin Metals says Interior erred because it was entitled to non-discretionary renewal under the contract terms. In the complaint, plaintiffs say considering a no renewal, no action alternative was not an option under the 2004 leases, which granted Twin Metals a right to renewal that was not conditioned on environmental review. That's at JA 58. They say the third renewal was not conditioned on Forest Service consent. That's at JA 53. They say the appropriate interpretation of the leases is granting non-discretionary renewal. That's at JA 41. Plaintiffs counsel... Don't they argue as a matter of law, Forest Service consent is not required? Isn't that the crux of their argument? And if they're right about that argument, then isn't that an APA claim? Your Honor... Or just resolving that argument, isn't that classic APA claim? The crux of their argument is Forest Service consent wasn't required because renewal was non-discretionary. And there's no statute that gives them a right to non-discretionary renewal. Under the Megapulse test, this court has to look at what's the source of the right and is it a truly independent source, truly independent from the contracts. So in Megapulse, they said, the Trade Secrets Act, that's the independent source of our rights. We developed this data before we ever contracted with the government. We have these rights. Here, there's no statute that says you have a right to non-discretionary renewal. The statute that says you have to have Forest Service consent and the statutes that authorize leasing, they don't actually mention renewal at all. Plaintiffs point to the regulation from 1966 that addressed renewal. That's 43 CFR 3221.4F. That says, the lessee will be granted a right of renewal under such reasonable terms and conditions as the Secretary of the Interior may prescribe. So one, the regulation doesn't say whether renewal is discretionary or non-discretionary. And two, the regulation encompasses the terms and you have to look at the terms to figure out whether it's discretionary or not. The metals council talked about the Downs opinion, but they're not saying in their complaint, Downs misconstrued NEPA. This is actually how NEPA works. They're not saying in their complaint, Downs misconstrued 16 USC 508B. And this is how leasing in this area works. They're saying in their complaint, we had a right to non-discretionary renewal. That's the source of their right. Plaintiffs also point to the regulation that says, that authorizes Interior to cancel a lease. That's 43 CFR 3514.30B. That regulation says nothing whatsoever about renewal, much less non-discretionary renewal. It says, BLM may cancel your lease administratively if we issued it and in violation of any law or regulation. So isn't the relief that they're requesting vacature of the Downs opinion? The relief that they're requesting is specific performance. They're asking the court to set aside the cancellation of the contracts and declare that the contracts are valid and in force. That is specific performance. Congress, when it promulgated section 702 of the APA specifically said in the legislative history, we don't want the APA to be a mechanism for people to get specific performance of government contracts. And there's policy reasons for that, but that's what they're seeking here is specific performance. Does it matter that the renewal and the cancellation are separate agency actions? The renewal in 2019 and the cancellation in 2022? Yeah. I'm not sure that I see how it would matter for the claims before this court now, the agency action before this. I'm not sure it does. I'm not sure it does either, but you have authority for saying you look to the ultimate source of the right. I get that. It Another way of thinking about this is you can disentangle the cancellation. If the cancellation rests on the legal proposition that Forest Service consent was required, it's a statutory question. It's unconnected to the prior renewal. It feels a little more APA-like. It's discreet. And answering that question, you don't need to know whether ultimately they're entitled to renewal of the lease. It could still be the case that renewal is totally discretionary and they've just given a legally bad reason for exercising their discretion. That's not the complaint that plaintiffs brought, Your Honor. The complaint that plaintiffs brought says the third renewal was not conditioned on Forest Service consent, that the 2004 leases granted Twin Metals a right to renewal that was not conditioned on environmental review, that the leases should be interpreted as granting non-discretionary renewal. That's the complaint that they chose to bring. I wanted to point to the court to the specific citations about the fact that what they're seeking is specific performance. They request a declaration saying that the 2019 leases remain valid and in force. That's JA-24 and JA-63. They ask the court to set aside the cancellation. That's JA-62. And that specific performance of the leases is not conditional on the renewal of the leases. Classic contractual remedy. I guess I'm having trouble understanding how asking for the court to declare that, like the Downs opinion, I'm looking at their prayer for relief, which is page 44 of the complaint. I don't know what page of the JA it is because what I'm looking at, it's not paginated. But it asks that for the court to declare that several actions are contrary to law and be vacated and set aside. And there's a laundry list of them. A to E at paragraph 133. And then, you know, one third paragraph 134 is declared leases remain valid, et cetera, et cetera. I don't understand how any of that is requesting specific performance. It's seeking a declaration that certain actions or opinions were erroneous. And then to the extent that those were relied upon to take other actions to not renew the leases, then that legal effect flows from that. But how is any of that specific performance? So I have two responses to that, Your Honor. The first is that the actions listed in paragraph 133 of the complaint, which is JA-62, we're not saying that all of those are contract claims. For example, they list their challenge to the rejection of their preference-right lease applications, and we're not suggesting that that's a contract claim. So we're only pointing to the pieces that challenge the lease cancellation specifically. And then my second response, and the more important one, Your Honor, is that under Megapulse, the court looks at what's the essence of this claim? At its heart, what is it? Is it a contract claim or is it an APA claim? And at its heart, this is a contract claim. And to make that determination, the court looks at the source of the right and the relief that they're seeking. And on these specific facts, the constellation of facts here, what they're seeking is specific performance. The source of the right is the contracts. They're not able to point, and counsel pretty much conceded that that the source is the contract. There's no statute. So claim one, which is at page 39 of the complaint, I don't have the JAs of that. It says that the lease cancellation violated the APA because the reconsideration of the Georgiani opinion was untimely, etc. And the Downs opinion was erroneous, essentially. How is that a contract? Because, Your Honor, they say in claim one, paragraph 113, a no renewal, no action alternative was not an option under the 2004 leases, which granted Twin Metals a right to renewal that was not conditioned on environmental review, according to the Georgiani's opinions, correct and reasonable interpretation. And then in paragraph 114, they say they have a right to successive renewals of leases. So, you know, the essence here is a contract claim. I guess I may make it a little bit more plain. So, yes, it does allege that. But if it doesn't allege that, then how do we know whether there's an injury, whether they're standing? But the claim, that claim in essence seems to be all about the opinion. And we hear those APA cases, you know, every day of the week, whether some interpretation, whether it's a interpretive ruling or a more binding regulatory ruling, whether those are erroneous or not. I mean, that's within the heartland of the APA. I mean, sometimes we have to figure out whether it's final agency action and it's actionable, but I mean, that's what the APA is for, right? Your Honor, I have a couple responses to that. First, we certainly aren't challenging plaintiff's standing, but we don't think that paragraphs 113 and 114 are there to establish standing. You could say, you know, we have standing because we have interest in this area, we've invested in this area, and we're bringing a claim based on something else. I mean, that's all I'm saying is that if all they said in their response would be, well, who cares? You got to have some sort of context. And the reason we care is because it led to the cancellation of leases. That doesn't mean that the lease is the basis of the claim. I mean, isn't your point, what's the basis? It's the point I was asking opposing counsel. So what is the alleged regulatory violation? The APA, this can't be an arbitrary and capricious claim the way the case is framed. That would be silly. So if we're looking at the APA, we're looking at an alleged violation of law. And so the question becomes, well, what? What regulation, what statute are they claiming is violated? And I think what you're, if I'm understanding you correctly, you're saying no matter what else they say, bottom line, they're saying under the lease, this could not happen. That's where a right comes from. Is that right? Yes, Your Honor. Yes. And exactly. And back to Judge Wilkins' question. Let's just say, hypothetically speaking, that Interior had done a NEPA analysis on whether to renew or not and said, we're not going to renew based on the NEPA analysis that we've done and the environmental consequences. And they brought a claim and said, you didn't do NEPA right. You didn't consider X. You didn't consider Y. That would be an APA claim. And we would still be in a place where the cancellation is, to the court's point, why we care, why we're here. But the claim they brought is, you couldn't do NEPA because we had a right to non-discretionary renewal. That is a contract claim. Can I point to any regulation that says they had a right to non-discretionary? Yes, Your Honor. That was a more concise way of saying. If the court has no further questions on the contract claim, I will turn to the preference right lease application claim. So, turning to the preference right lease application claim, plaintiff's challenge to BLM's denial of their preference right lease applications fails as a matter of law. Plaintiff's lease applications were pending when the Forest Service filed an application to withdraw relevant lands from mineral leasing. Under the Federal Land Policy Management Act, when Interior receives an application to withdraw lands, then the lands must be segregated from mineral leasing. That's 43 U.S.C. 1714B. Upon publication of a Federal Register notice announcing the application, the land shall be segregated. And BLM regulations mandate that BLM must reject discretionary applications to use segregated lands, 43 CFR 2310.2D. That regulation says applications for the use of lands involved in a withdrawal application, the allowance of which is discretionary, shall be denied. At the time of the withdrawal application and the segregation of the relevant lands, plaintiff's lease applications remain pending and issuance of any leases remain discretionary. Because it was discretionary, BLM had to deny the applications. That's a straightforward application of the regulation's plain language. There are two steps where the United States had discretion. The court doesn't need to reach any of those steps because the material question is whether there was any discretion, and that alone suffices to require denial. But in any event, the two steps are, one, BLM must determine that issuing a lease is in the best interest of the United States under 16 U.S.C. 508B. And two, the Forest Service must consent to the issuance of a lease. Those are two discretionary steps. And Interior had not yet decided that issuing a lease was in the interest of the United States. And the Forest Service certainly had not consented to the issuance of leases, and nobody disputes that they have the right to consent. So the applications were discretionary. Twin Metals relies heavily on an interpretation of the regulations that the plain language of the regulations doesn't support. The regulations don't say if, you know, these are the only reasons by which your lease application may be denied, and they don't say if you do these three things, you must be entitled to a lease. I think it's important to take a step back here and recognize that these regulations apply to a variety of different leasing statutes. For example, under the Mineral Leasing Statute, excuse me, under the Mineral Leasing Act, a prospecting permit holder who discovers a valuable mineral deposit is entitled to a lease. That's what the statute says. But 16 U.S.C. 508B is an obscure specific statute that, to the best of Interior's knowledge, has only ever applied to four leases ever. It only applies on national forest lands. And that statute says that the Forest Service has discretion whether to consent, and it says that the Interior needs to decide that issuing a lease is in the best interest of the United States. Plaintiffs make an expressionist argument, but that doctrine only applies when the circumstances support a sensible inference that the term left out must have been meant to be excluded. And this court said that in Delaware River Keeper Network 857F3D388. The point here is that the statute gives the Forest Service discretion. The statute says the Forest Service can consent or not. The Forest Service has discretion. Interior has discretion whether or not to determine that a lease is in the best interest of the United States. Plaintiffs argue that this is a post hoc explanation because in the decision that Interior made rejecting the preference right lease applications, Interior said refer to BLM's discretion instead of the United States' discretion. That's at J234. We think that's and most importantly BLM cited the applicable regulation 43 CFR 2310.2D. This isn't a situation where Interior cited regulation X and now post hoc counsel is citing a completely different statute or regulation. This is a situation where they cited the regulation and they said this is at our discretion. We believe BLM has discretion. Plaintiffs disagree. There's no question the Forest Service has discretion and the Interior's path can reasonably be discerned. If the court has no further questions on the preference right lease application claim. What about the Forest Service discretion? To consent or not to consent. Is that sufficient? To deny the lease applications? Yes, it's the existence of that discretion. Because the application was discretionary, it had to be denied by law. Plaintiffs argue that they're entitled to get a decision from the Forest Service but they don't have any such right. The application was discretionary at the time that the lands were segregated from mineral leasing and it's the existence of that discretion that mandates denial of their applications. And either, in your view, either discretion vested in BLM or discretion vested in the Forest Service is sufficient? Yes, Your Honor. We think both exist, but even if you disagree with us, we only need to resolve one of the two. Yes, Your Honor. Yes, Your Honor. If the court has no further questions, it should affirm. Thank you. Good morning. It may please the court. Aileen McGrath for the intervener at the lease. I agree with the government that as to the jurisdictional question, the complaint speaks for itself and makes clear that the source of the rights that Twin Metals is asserting in this case. And I believe I heard Twin Metals to articulate it the same way. Despite cloaked under the APA, the source of the rights that the plaintiff asserts emanate from the contract itself, and that alone is enough to resolve the jurisdictional question. I think what I will add is that to the extent that Twin Metals has raised any counter arguments, I think that the court's existing precedent answers those counter arguments and many of the questions that the court has asked here today. Maybe I'll start with the questions that Judge Wilkins was asking a moment ago about the relevance of the need for the court to construe any federal regulations governing the determinations made in the Downs opinion in reference to paragraph 113 of the complaint. This court's decision in spectrum leasing at footnote five expressly said that the need to consider federal regulations and construe those federal regulations does not transform what is otherwise a contract claim into something else. That's exactly the scenario here. And that's even putting aside the fact that as I think the government has already pointed out, with respect to each and every one of those challenges to the Downs opinion, the government's argument, Twin Metals' argument, excuse me, is that the government disregarded rights that belong to Twin Metals by virtue of the leases, not that the government otherwise misconstrued or misapplied rights that Twin Metals has under any other source of federal law. And so spectrum leasing, I think, disposes of the question whether the relevance of those regulations changes the essential character of this claim. Number two, Twin Metals argues that the fact that the government invoked a provision that allows it to cancel contracts in certain circumstances and the fact that the contract itself contains a reference to a federal regulation, that that too changes the essential nature of the contract. Here too, the court's precedents already answer that question. On pages 70 to 79 of the court's decision in Ingersoll Ranch, the court considered an identical argument about a contract that likewise referenced a federal regulatory provision and a government cancellation that likewise invoked a similar source of authority for the government to cancel a contract. There too, this court said that's not enough to change what is at its essence a contract action. Number three, the court here, I've heard Twin Metals to say that allowing jurisdiction to vest in the court of federal claims here would all sorts of other challenges to an agency's reasoning and decision-making to the court of federal claims. That is another argument this court rejected in Ingersoll Ranch as well, where the plaintiff made exactly that argument. And so again, as I started with, even though you can look plainly at the face of the complaint and to the arguments that have been made here to see that this case belongs in the court of federal claims, you can also look squarely to this court's existing precedent. Beyond that, I'll very quickly, if I may, say something about the Forest Service consent issue as to the preference right lease applications. And as to that issue, we agree with the government, and this is why we haven't taken a position on the 28J letters and all the documents that have been exchanged back and forth, because our view is that none of that matters whatsoever. The regulation that the court needs to construe here, as this court has already explored, speaks to whether the allowance of an application is discretionary. The plain language... What about Ms. Blatt's prudential arguments? This is messy. It hasn't been a focus of the briefing. The reason it hasn't been... It's not a court of first view or review. Because I don't think the court needs to, and in fact could not, in properly construing that consider questions about what the Forest Service might have or would or has done. Because the regulation looks only to the existence of whether the Forest Service has discretion. The Forest Service's position and any arguments that Twin Metals might make in response to that position is all entirely beside the point. The 43 CFR 2310.2 directed Interior, through the Bureau of Land Management, to deny these applications based on the existence of that discretion and not to require the Forest Service to act upon it. So anything that the Twin Metals or anyone has tried to introduce in the record that speaks to that possibility or arguments that might be made is completely beside the point as to this interpretation, this interpretive question. And you'd be pressing that argument even if the Forest Service had consented on the last round? The argument would be the same, yes, Judge Katsas, because the question is whether there is the existence of discretion at some level of the government. And to be clear, we agree with the government, as I think we clarify in our brief, that BLM's discretion here also resolves the issue. But you need look no further than the existence of the Forest Service's discretion. Whether it actually took a position doesn't matter for purposes of answering that question. Yeah, I understand why you read it that way. It's a much less attractive position if they have in fact consented, but I understand. Thank you. Unless the Court has any further questions on either of these issues, I think we would ask the Court to affirm. Thank you. All right, Ms. Blatt, I believe you're out of time, but we'll give you three minutes on rebuttal. Some very quick points on the jurisdictional issue. They keep framing this as, quote, we're alleging a non-discretionary right to renew. That's not in the complaint. The paragraph that they cite in the paragraph the District Court cites, which is 114, uses the right to renewal. And then we cite a regulation. We don't cite the lease. We cite 3221. So the only non-discretionary right to renewal that's mentioned in the complaint refers to a regulation. What we're seeking is a right not to have our release arbitrarily canceled. JA-260 is the cancellation. It is based on the Downs opinion. Paragraphs 113 and the preceding paragraph says the Downs opinion's legal conclusions were wrong. And to that extent, that is all APA. And Judge Edwards, I'm sorry if it wasn't clear, but on page 34 of our brief, we say that the regulation that was violated in this case is the 351430, which is what I started. We're saying the government violated the regulation that Interior construed that authorized cancellation. They violated that regulation because they erroneously concluded that there were three statutory and regulatory violations. We also, on page 34 of our brief, and the complaint also says that the 3221.4 regulation in paragraphs, I think it's in 113 and 114, it goes through a host of regulatory violations. On the preference right lease applications, remember that this withdrawal regulation and the statute is subject to valid existing rights. There's a lot of talk about that in the brief. And obviously, Judge Casas, if the Forest Service had consented, it would obviously be a valid existing right, and they couldn't have done that. And so the valid existing rights are highly relevant because we think that's not a vested right. A vested right is a contract. But if there's any regulatory right to the process, i.e. we could have challenged the Forest Service's consent denial, we have a valid existing right. The notion the government said that the statute gives them right to decline a lease. So that would separate the two issues the district court conflated. Did the existence of discretion and valid existing rights? Yes, the district court and the agency below. The agency never analyzed valid existing rights. It says, yeah, we have this regulation, valid existing rights, but in any event, BLM has discretion. Makes sense to equate if we're talking about BLM's discretion. Yeah, yeah, I guess. Yes, I mean, we think, correct. Yes, I think we'd still have an argument. Less so for the Forest Service. Yeah, I think it would depend. We think the regulation about discretion is talking complete discretion. If you disagree with that and you think there's actually cabin discretion, then I think not only is that regulation not implicated, but the valid existing rights kicks in. And again, we think we are litigating our valid existing rights under the Forest Service consent issue now, which the agency sought three years too late. The government's entire reliance on BLM's discretion is the statutory notice that this is in the best interest of the United States, but then they can't issue an entire regulatory scheme giving you an entitlement and say, oh, never mind. I mean, that's just pretty bedrock APA law that the agency is bound by its regulation. And we think the, you know, the most reasonable interpretation of the regulations is that we had a right to go through the process. And also, again, because it wasn't litigated, the government says we don't dispute the Forest Service consent. Well, we would. We would argue the Forest Service already consented, and therefore we had a valid existing right. And that's it. Thank you. Thank you. We'll take the matter into advisement.
judges: Wilkins; Katsas; Edwards